## 70002. GOVERNMENT EMPLOYEES INSURANCE COMPANY v. PRESLEY.
### (330 SE2d 779)

DEEN, Presiding Judge.

The appellee, Chris Presley, commenced this action against Government Employees Insurance Company (GEICO), seeking payment of no-fault benefits, and statutory penalties, attorney fees and punitive damages because of the non-payment of his claim. GEICO appeals from the jury verdict for the appellee for $8,311.40 no-fault benefits, $2,077.85 as a twenty-five percent penalty and $10,000 punitive damages.

On July 6, 1981, the appellee was involved in a one-car automobile accident when his vehicle slid on wet pavement into an embankment. At the time of the accident he did not believe that he was injured, and made no complaint of injury to the investigating police officers at the scene. On July 7, 1981, he informed GEICO of the incident and reported only the property damage to his automobile. GEICO paid this claim for the collision loss on July 10, 1981, and on the same day, the appellee advised a GEICO representative that he had some stiffness in his neck and that he would report if he went to a doctor.

On the morning of July 20, 1981, the appellee appeared at the hospital emergency room, complaining of chest pain and difficulty with breathing. The emergency room physician, Dr. Edward Burton, diagnosed a collapsed right lung, and referred the matter to Dr. Kam Sreeram, a thoracic surgeon who had treated the appellee in 1979 for a spontaneous pneumothorax of the right lung. Dr. Sreeram's admitting diagnosis was spontaneous pneumothorax. Following the appellee's admission, Dr. Sreeram was obliged to be out of town for a few days, and during the latter's absence, Dr. Joe Robinson, another thoracic surgeon, saw the appellee. Dr. Robinson's diagnosis in discharging the appellee on July 28, 1981, also was spontaneous pneumothorax of the right lung.

The uncontroverted medical evidence distinguished two types of pneumothorax, i.e., spontaneous and traumatic. Spontaneous pneumothorax occurs in young males between the ages of 20 to 40, when blebs (or blisters) form on the lung and rupture, thus collapsing the lung. (The appellee was 25 at the time of his hospitalization.) The medical profession has not discovered any cause for the blebs; there was no dispute, however, that no traumatic injury was required to precipitate a rupture of a bleb, and that there was a very high incidence of recurrent spontaneous pneumothorax. A traumatic pneumothorax referred to a collapse of a lung because of some physical injury, such as the puncture of a lung by a broken rib.

On August 6, 1981, the appellee went to GEICO's office and, in

presenting his claim for medical expenses and lost wages resulting from his hospitalization for his collapsed right lung, first asserted to GEICO that he had suffered a chest injury during the accident. On that day he submitted a wage verification form and an attending physician's statement, in which Dr. Sreeram indicated that the appellee had sustained a chest injury in an automobile accident that resulted in the pneumothorax of the right lung; in a note, Dr. Sreeram also advised that the appellee would require corrective surgery on that lung to reduce the risk of future pneumothorax. On August 7, 1981, the appellee gave a recorded statement and formally filed his application for no-fault benefits, and indicated that in addition to the chest injury which resulted in the collapsed lung he had sustained injuries to his neck, back, and four teeth. The insurance agent who took the appellee's statement explained then that she would need additional information before she could determine the claim, and on August 10, 1981, she actually requested the hospital records concerning the appellee's 1979 and 1981 hospitalizations. On August 11, 1981, the appellee submitted two reports completed by his dentist, Dr. Robert Mattox. These statements indicate only that the appellee needed repair of four teeth because of trauma received in an auto accident and that the appellee had first contacted the dentist about the matter on August 4, 1981.

On August 13, 1981, the appellee's attorney discussed the case with Mr. Maurice Lee, GEICO's regional claims director, who authorized payment of $1,051.87 for lost wages. Payment of the claimed medical expenses was delayed until further investigation. (The requested hospital records had not yet been received.) On August 18, 1981, the insurance agent wrote the dentist, requesting the appellee's dental records for the last six months, in order to determine whether the injury to the appellee's teeth resulted from the accident of July 6, 1981. On August 19, 1981, GEICO received a letter from the appellee's attorney, in which he demanded payment of the claim for medical expenses within 30 days and revoked all previous authorizations for release of medical or wage information. The insurance agent eventually received the requested hospital records on or about August 26, 1981, but the records indicated a diagnosis of spontaneous pneumothorax and contained no reference correlating the appellee's collapsed lung with the automobile accident of July 6, 1981. (Also, no other physical injuries or complaints were noted.) The agent again wrote the appellee's attorney on September 2, 1981, confirming receipt of his letter revoking the previous medical releases and advising him that the claim was still pending receipt of reasonable proof that the injuries resulted from the automobile accident. On October 14, 1981, the agent's supervisor also wrote the appellee's attorney, acknowledging the revocation of the previous authorizations for medical and

wage information, and requesting additional reports from Dr. Sreeram and Dr. Mattox regarding how the appellee's pneumothorax and tooth injuries were related specifically to the automobile accident of July 6, 1981. On October 21, 1981, however, the appellee commenced this action.

Subsequently, after deposing the dentist, GEICO paid the dental claim on December 14, 1981, approximately two months before the appellee actually had the dental work. On or about December 15, 1981, the appellee submitted another letter, dated November 18, 1981, from Dr. Sreeram, who reiterated that he had treated the appellee for a pneumothorax resulting from an automobile accident on July 6, 1981, and that the appellee had subsequently undergone corrective lung surgery to prevent recurrent pneumothroax. The following day, however, Dr. Sreeram was deposed, and at that time he clarified that while it would have been reasonably possible that the appellee injured his lung and that the injury worsened over the two-week period to the point where the appellee was compelled to seek medical attention, he actually could give no medical opinion as to whether the appellee's collapse of the right lung on July 20, 1981, was related to the automobile accident of July 6, 1981; the physician did recall that during the appellee's hospitalization he had mentioned the automobile accident. Dr. Sreeram's testimony at the trial essentially was the same as that in his deposition, but he emphasized that in this case, involving a patient with a history of spontaneous pneumothorax, it was impossible to state whether the collapsed lung of July 20, 1981, was caused by the accident of July 6, 1981, or was merely a recurrent episode of spontaneous pneumothorax.

Dr. Robinson testified at the trial that it was physiologically impossible for the appellee to have sustained either a chest injury which caused a pneumothorax two weeks later or a collapsed lung at the time of the accident that did not warrant medical treatment for two weeks. Dr. Robinson explained that, if anything, a pneumothorax would improve over a two-week period, and not worsen; he further indicated that had the appellee sustained a chest injury that collapsed his right lung on July 6, 1981, the collapse would have developed within a twenty-four-hour period of the injury, and that the symptoms would have been so severe as to prompt one to seek immediate medical attention. Dr. Robinson had also given essentially the same testimony in a deposition taken on December 16, 1981. The deposition testimony of Dr. Edward Burton and Dr. Charles Ogburn, also taken on December 16, 1981, was read into evidence during the trial. Like Dr. Robinson, Dr. Burton strongly denied the possibility of any causal relationship between the automobile accident of July 6, 1981, and the appellee's pneumothorax of July 20, 1981. Both Dr. Robinson and Dr. Burton vehemently insisted that the appellee

merely had suffered recurrent spontaneous pneumothorax, totally unrelated to the accident two weeks earlier. Dr. Ogburn explained that trauma could also cause a spontaneous pneumothorax by rupturing a bleb already present.

The appellee testified at trial that he had experienced chest pain during the two weeks following the automobile accident, but that he had continued to work and had not gone to a doctor earlier because his family could not afford the loss of income. Some of his co-workers described the appellee's difficulty at work during that two-week period. The appellee explained that he did not remember how he had injured his chest during the accident, but he surmised that his chest had struck the car's steering wheel. (He testified that the steering wheel actually was bent during the accident, although his claim for property damage did not reflect any such damage.) He further explained that he had not mentioned the automobile accident to Dr. Burton at the emergency room on July 20, 1981, because he had not yet correlated the lung injury to the accident. *Held*:

1. The appellant contends that there was no competent medical evidence establishing any causal relationship between the appellee's automobile accident of July 6, 1981, and his collapsed lung diagnosed on July 20, 1981, and that the trial court therefore erred in not directing a verdict for the appellant. A directed verdict is proper only where there is no conflict in the evidence as to any material issue of fact and the evidence, together with all reasonable deductions or inferences therefrom, demands a particular verdict. OCGA § 9-11-50, generally; *Carver v. Jones*, 166 Ga. App. 197 (303 SE2d 529) (1983). A court cannot direct a verdict where there is any reasonable inference supported by the evidence which would support a verdict in favor of the respondent to the motion. *Findley v. McDaniel*, 158 Ga. App. 445 (280 SE2d 858) (1981). Moreover, in determining whether any conflict in the evidence exists, the evidence must be construed most favorably to the party opposing the motion. *Skelton v. Skelton*, 251 Ga. 631 (308 SE2d 838) (1983).

In this case, regarding the issue of the appellant's liability for the claim for medical expenses, considering the appellee's testimony that during the automobile accident he had been jarred about and the steering wheel had been bent (inferring that his chest had struck the steering wheel), in conjunction with the testimony of Dr. Sreeram that while it was impossible definitely to identify this alleged trauma as the cause of the appellee's collapsed lung, that causal relationship was reasonably possible, there was a sufficient evidentiary basis to submit the case to the jury. It does not matter that a verdict for the appellant would have been more strongly supported by the other evidence. Accordingly, the trial court properly declined to direct a verdict for the appellant or to grant a judgment notwithstanding the

verdict.

However, we reach the opposite conclusion with regard to the award of attorney fees, the twenty-five percent penalty, and the punitive damages. OCGA § 33-34-6 (b) provides that "[b]enefits required to be paid without regard to fault shall be payable monthly as loss accrues. The benefits are overdue if not paid within 30 days after the insurer receives reasonable proof of the fact and the amount of loss sustained. If reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after proof is received by the insurer . . . In the event the insurer fails to pay each benefit when due, the person entitled to the benefits may bring an action to recover them and the insurer must show that its failure or refusal to pay was in good faith, otherwise the insurer shall be liable for a penalty not exceeding 25 percent of the amount due and reasonable attorney's fees." OCGA § 33-34-6 (c) further allows an award of punitive damages where the insurer fails to pay entitled benefits within 60 days after proper proof and where the insurer fails to demonstrate that its failure to pay was in good faith.

Ordinarily, the question of good or bad faith is reserved for the jury, but where there is no evidence of a frivolous or unfounded reason to pay, or if the issue of liability is a close one, the court should disallow imposition of bad faith penalties. *Georgia Farm Bureau Mut. Ins. Co. v. Matthews*, 149 Ga. App. 350 (254 SE2d 413) (1979); *Pearl Assur. Co. v. Nichols*, 73 Ga. App. 452, 455 (37 SE2d 227) (1946). In the instant case, given the past experience of the appellant's agents with cases involving collapsed lungs, the fact that the appellee initially complained of no personal injury, and that two weeks elapsed before the appellee sought treatment for the lung, the appellant's insistence upon additional medical evidence establishing some causal connection between the automobile accident of July 6, 1981, and the collapsed lung discovered on July 20, 1981, was justifiable and reasonable. As the medical evidence finally adduced was strongly in favor of the appellant, and the appellee just barely produced enough evidence to support a verdict for the medical expenses, there was no legal basis for the jury's award of the bad faith penalties. Cf. *Binns v. MARTA*, 250 Ga. 847 (301 SE2d 877) (1983).

The appellant likewise was entitled to directed verdict with regard to any bad faith penalties based on the failure to pay the claim for dental expenses timely. Notwithstanding any infirmity as proof of loss, i.e., only generally indicating that the dental injuries were sustained in an automobile accident, the two statements of the dentist submitted by the appellee on August 11, 1981, simply did not demonstrate that the recommended treatment had been contracted for, performed, or paid for, and those expenses thus had not been "incurred"

at that point for the purposes of OCGA § 33-34-6. *Rosemond v. Prudential Property &c. Ins. Co.*, 170 Ga. App. 189, 191 (316 SE2d 541) (1984). There was no other evidence that these dental expenses had been so incurred prior to the actual performance of the work *after* the payment on December 14, 1981. Accordingly, the appellee's claim for bad faith penalties was without legal basis.

2. The trial court would not allow the appellant to ask Dr. Burton whether the extent of the collapse of the lung diagnosed on July 20, 1981, could have existed from the date of the automobile accident. The question certainly was relevant and proper in that one crucial sub-issue was whether it was medically possible for a person to tolerate a pneumothorax for two weeks before seeking treatment. However, the appellant had already elicited unequivocal testimony from Dr. Burton that in his opinion the accident of July 6, 1981, had nothing to do with the appellee's pneumothorax discovered on July 20, 1981. Because an answer to this disallowed question favorable to the appellant would have been needlessly redundant, there was no error in its exclusion.

3. The appellant also contends that the trial court erred in allowing the appellee to ask Dr. Sreeram whether an impact to the appellee's chest sustained in an automobile accident could be causally related to the injury for which the appellee sought treatment on July 20, 1981. The obvious purpose of the question was to establish that a blow to the chest could cause a pneumothorax. The basis of objection at trial was that of insufficient factual foundation for the question. The only foundation really necessary for the question, however, concerned whether or not the appellee actually sustained a chest injury during the automobile accident, and the appellee's prior testimony about the bent steering wheel and subsequent chest pain provided that foundation.

4. Counsel for the appellee invited Dr. Robinson to identify which portion of the hospital records actually prepared by him substantiated his testimony that the appellee had indicated that the onset of chest pain had occurred while he was asleep on the morning of July 20, 1981, and Dr. Robinson was unable to do so. The trial court properly disallowed the appellant's subsequent attempt to have Dr. Robinson read from the appellee's history contained in the emergency room report (which was not prepared by the doctor), on the grounds that such constituted inadmissible hearsay. Cf. *Dennis v. Adcock*, 138 Ga. App. 425, 428 (226 SE2d 292 (1976); *Giles v. Taylor*, 166 Ga. App. 563 (305 SE2d 154) (1983). The appellee properly could examine Dr. Robinson about portions of the hospital record prepared by the doctor, and this line of questioning did not authorize the appellant's "rehabilitation" of the witness with inadmissible matter.

5. The appellant also contends that the trial court erred on sev-

eral evidentiary rulings during the appellee's examination of his own witness, Dr. Ogburn. Two questions, on whether an individual would experience pain following either some trauma to the chest or a minor pneumothorax, were leading, as the appellant asserts. However, it is within the sound discretion of the trial court to allow a witness to be led on direct examination, and this discretion will not be disturbed unless it is abused. *Dale v. Hall County Dept., Family &c. Services,* 159 Ga. App. 654 (284 SE2d 669) (1981). There was no abuse of that discretion in allowing these slightly leading questions.

The trial court also allowed the appellee to question Dr. Ogburn on whether it was possible for one to have a pneumothorax but, attributing the chest discomfort to residual pain from a traumatic injury to the chest, not seek treatment for it. The question merely concerned the subjective matter of gauging the level of pain, exploring the possibility of one having a pneumothorax but initially experiencing a level of pain tolerable enough not to seek medical treatment. Even though the question was leading to some extent, as above, we find no abuse of discretion by the trial court in allowing it. Additionally, the question was not improper because it called for an opinion as to a possibility of tolerable pain rather than a medical probability. The appellant misplaces its reliance upon *McDaniel v. Employers Mut. Liability Ins. Co.,* 104 Ga. App. 340, 343 (121 SE2d 801) (1961), since that case concerns the sufficiency of a medical opinion alone (as to the possibility of a causal relationship) to support a finding, and does not limit the admissibility of such an opinion.

The appellant also contends that the trial court improperly allowed the appellee's hypothetical question addressed to Dr. Ogburn, which assumed that the appellee was involved in an automobile accident on July 6, 1981, that he was having no difficulty with his lungs beforehand, that during the accident he was thrown about in the vehicle and struck his chest on the steering wheel, and then asked whether, with reasonable medical certainty, the accident could cause an injury similar to the one described as a spontaneous pneumothorax. Contrary to the appellant's assertion, however, there was sufficient factual foundation for the question. Specifically, even though there was no direct evidence that the appellee struck his chest on the steering wheel during the accident, that conclusion certainly was a permissible inference from the other evidence and thus was properly included in the hypothetical question. See *Hyles v. Cockrill,* 169 Ga. App. 132, 136 (312 SE2d 124) (1983).

Counsel for the appellee subsequently asked Dr. Ogburn whether being thrown against a steering wheel with sufficient force to bend the wheel would be enough force to cause a spontaneous pneumothorax, to which the physician replied that such force could cause a pneumothorax. The doctor's answer thus was somewhat unresponsive, but we

are unpersuaded that any confusion or prejudicial error occurred by its admission since the record is replete with medical explanations distinguishing the two general types of pneumothorax.

6. The appellant also enumerates as error several omissions by the trial court in its charge to the jury. The trial court declined to instruct the jurors that they would not be authorized to return a verdict for the appellee (a) if they could not determine the cause of the appellee's medical condition with certainty, and (b) if they found that the appellee's medical problems resulted from natural causes unrelated to the automobile accident of July 6, 1981. The trial court did instruct the jury that the appellee could recover only (a) if he proved his case by a preponderance of the evidence; and (b) the jury found that the appellee's collapsed lung resulted from injuries sustained in the automobile accident on July 6, 1981.

A verdict would be based on mere conjecture where "from the same proof, there are two or more plausible explanations or theories of causation as to how an event happened, or what produced it, and . . . the evidence is without selective application to any one of them. . . ." *Southern Grocery Stores v. Greer*, 68 Ga. App. 583, 590 (23 SE2d 484) (1942). In this case, there were two distinct theories of causation of the appellee's collapsed lung, and the evidence was not without "selective application" to each of those theories. Accordingly, the requested charge on verdicts based on conjecture was inappropriate. Concerning the requested charge on causation of the appellee's medical problems, it is clear that the trial court actually covered that matter in its general charge to the jury.

7. The appellant's numerous other enumerations of error regarding evidentiary rulings and jury charges relative to the issue of bad faith, of course, have been rendered moot by our holding in Division 1 above. There being no reversible error in this case other than the award for the twenty-five percent penalty, attorney fees, and punitive damages, the judgment of the trial court is affirmed with direction that the portion of the verdict and judgment awarding such bad faith penalties be written off; otherwise the judgment is reversed.

*Judgment affirmed on condition. Pope, J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

I concur in the judgment and opinion with the exception of Division 2; as to it, I believe the question was proper and was not clearly redundant. However, in light of all of the other evidence on the matter, its exclusion would not require a reversal. Nor did counsel make plain what he was driving at, when the objection was made, or how this question differed from what had previously been asked. It is true that Dr. Burton had discounted a causal relationship between the col-

lision and the pneumothorax. Further, as said earlier, it was his opinion that what Presley suffered was spontaneous. The question sought to elicit whether the pneumothorax which he diagnosed on July 20 could have existed as early as July 6. Counsel was inquiring about the *timing* of the pneumothorax, not directly about its *cause*. Obviously, if the witness said "no," it would be further that the two events could not have happened on the same date, even coincidentally and unrelatedly. If he said "yes," then he could be called upon to explain away their apparent relationship.

DECIDED APRIL 12, 1985.

*Joseph H. Chambless*, for appellant.
*J. Stephen Manko*, for appellee.