70406, 70407. JOHNSON v. NATIONAL UNION FIRE INSURANCE COMPANY; and vice versa.
(338 SE2d 687)

SOGNIER, Judge.

Roy F. Johnson brought suit against National Union Fire Insurance Company (National Union) seeking to recover personal injury protection (PIP) benefits under a policy issued by National Union, plus statutory and punitive damages. During a jury trial, a directed verdict was granted to Johnson as to the amount of benefits stipulated by the parties, and the jury returned a verdict in favor of Johnson for 25% statutory penalties as provided by OCGA § 33-34-6 (b) and $1.00 in punitive damages under OCGA § 33-34-6 (c). Johnson appeals in Case No. 70406; National Union cross-appeals in Case No. 70407.

On December 29, 1981, Johnson was walking along the side of a highway when a Volkswagen driven by National Union's insured struck a Lincoln Continental parked on the side of the road. The force of the impact propelled the Lincoln into Johnson, inflicting physical injury. Johnson sought PIP benefits from National Union as the insurer of the Volkswagen and he filed suit when National Union refused to pay. It is uncontroverted that National Union's denial of Johnson's claim was based solely on the insurance company's position

that Johnson's claim lay with the insurer of the Lincoln Continental, believed by all parties to be another insurance company. However, information obtained from the wife of the owner of the Lincoln led National Union's investigators to discover for the first time on April 20, 1982, that it was also the insurer of the Lincoln. A tender of the benefits sought by Johnson was promptly made by National Union under the Lincoln's policy, but Johnson refused the offer and the case proceeded to trial.

1. National Union contends the trial court erred by denying its motion for directed verdict because National Union, as the insurer of the Volkswagen, was not liable to Johnson as a matter of law for PIP benefits. OCGA § 33-34-7 (a) provides for the payment of basic no-fault benefits without regard to fault for economic loss resulting from "(3) Accidental bodily injury sustained by any other person as a result of being struck by the owner's motor vehicle while a pedestrian in this state." National Union argues that it is not liable as the Volkswagen's insurer because it was the Lincoln which physically struck Johnson and under the Georgia "no-fault" system the fact that the Volkswagen was the cause of the accident is irrelevant in determining the party liable for the injury.

In regard to National Union's liability as the insurer of the Volkswagen, we find persuasive the reasoning of the United States District Court (N.D. Georgia) in *Southern Guar. Ins. Co. v. Berry*, 560 FSupp. 901 (1983), which construed OCGA § 33-34-7 under a similar factual situation. In that case, as here, "[t]he crux of the instant dispute is, of course, whether the phrase 'struck by a motor vehicle' contemplates or requires direct physical contact between the alleged offending vehicle and the bodies of the persons claiming PIP benefits. . . . [National Union] does not seem to disagree with the contention that its insured vehicle was the 'but-for cause' of this accident. Rather, [National Union] asserts that issues of causation are irrelevant in the context of a statutory scheme in which 'fault' is immaterial, and that 'struck by an automobile' must be narrowly construed to cover only those situations in which there exists direct physical contact between the claimants and the offending vehicle. Although there is some authority to the contrary, the majority rule appears to be that one can be 'struck by an automobile' without actually coming in contact with the automobile itself. [Cits.] This court agrees. In ordinary parlance, the word 'struck' is frequently used to denote a movement or a force causing or resulting in a physical impact. The 'striking' force can be either the force which most immediately comes in contact with the object struck, or it can be the force setting in motion a chain of events leading up to the striking of an object. Were this court to accept [National Union's] argument that the moving car cannot have 'struck' [Johnson] because it never physically touched

[him], this court would be straining the meaning of these words far beyond their ordinary and logical usage in order to achieve a wholly impractical and inequitable result." Id. at 903.

Applying the reasoning behind the majority rule, as stated in *Berry*, supra, we hold that one can be "struck by" an automobile for the purpose of the application of OCGA § 33-34-7 (a) (3) without actually coming into physical contact with the automobile itself. Thus, viewing the uncontroverted evidence that National Union's insured's vehicle was the force which set in motion the chain of events leading up to the striking of Johnson, the evidence supports the jury's verdict and the trial court did not err by denying National Union's motion for directed verdict on the issue of its liability as the insurer of the Volkswagen. See generally *White Repair &c. Co. v. Daniel,* 171 Ga. App. 501, 503 (2) (320 SE2d 205) (1984). We note that due to National Union's dual role as the insurer of both the Volkswagen and the Lincoln Continental, we are not faced with the question of the liability of the insurer of the parked vehicle and this opinion should not be read as in any way adopting the conclusion reached by the district court in *Berry*, supra, as to this issue.

2. National Union contends the trial court erred by denying its motion for directed verdict as to the statutory penalties, attorney fees and punitive damages sought by Johnson pursuant to OCGA § 33-34-6 (b) and (c). We agree. Both OCGA § 33-34-6 (b) (25% penalty and attorney fees) and OCGA § 33-34-6 (c) (punitive damages) provide for the imposition of penalties should the insurer fail to prove that it acted in good faith in failing or refusing to pay the benefits sought. "Ordinarily, the question of good or bad faith is reserved for the jury, but where there is no evidence of a frivolous or unfounded reason to pay, or if the issue of liability is a close one, the court should disallow imposition of bad faith penalties. [Cits.]" *Government Employees Ins. Co. v. Presley,* 174 Ga. App. 562, 566 (1) (330 SE2d 779) (1985). At trial National Union presented evidence that it refused to pay Johnson's claim solely on the ground of its counsel's advice that as the insurer of the Volkswagen, National Union was not liable to Johnson under OCGA § 33-34-7 (a). The evidence adduced at trial shows that National Union acted consistently with this position when it promptly tendered the PIP benefits sought by Johnson under the Lincoln's policy upon learning that it was the insurer of the Lincoln. No evidence was presented at trial by Johnson to controvert National Union's assertion that it acted in good faith in refusing to pay Johnson's claim under the Volkswagen's policy. Johnson argues that as a matter of law National Union's good faith defense was refuted by its knowledge that foreign jurisdictions, in litigating similar factual situations, had reached conclusions adverse to National Union's position as to its liability as the insurer of the moving vehicle. However, those

opinions were not binding interpretations of Georgia law, see *U. S. Fidelity &c. Co. v. Kelley*, 131 Ga. App. 6 (205 SE2d 38) (1974), *Martin v. Henson*, 95 Ga. App. 715 (99 SE2d 251) (1957), and we are not persuaded by Johnson's arguments that National Union's knowledge of these nonbinding foreign decisions is a ground for the bad faith damages sought by Johnson. Although we now adopt the reasoning of these other courts as to the construction of "struck by," this case is one of first impression in Georgia in its interpretation of the specific language in OCGA § 33-34-7 (a) (3), and presented a close question as to the construction to be given this language. Thus, we find the trial court erred by denying National Union's motion for directed verdict on the issue of bad faith penalties as there was no legal basis for the jury to award such damages. See *Presley*, supra at 566 (1); cf. *Binns v. MARTA*, 250 Ga. 847 (301 SE2d 877) (1983).

3. Johnson enumerates 49 errors in the judgment of the trial court. An examination of these enumerations reveals either that they were all resolved in Johnson's favor in view of the jury verdict in Johnson's favor and thus present no question of harmful error to authorize reversal, see *Veal v. Fraser*, 155 Ga. App. 157, 161-162 (3) (270 SE2d 250) (1980), or else that they are decided adversely to Johnson under our ruling in the divisions above. Thus, there being no reversible error in this case other than the award for the 25% penalty, attorney fees, and punitive damages, the judgment of the trial court is affirmed in both appeals with direction that the portion of the verdict and judgment awarding such bad faith penalties be written off; otherwise the judgment is reversed. See *Presley*, supra at 569.

*Judgment affirmed on condition. Banke, C. J., McMurray, P. J., Birdsong, P. J., Pope, and Benham, JJ., concur. McMurray, P. J., Birdsong, P. J., and Pope, J., also concur specially. Deen, P. J., and Beasley, J., concur specially. Carley, J., concurs in part and dissents in part.*

BIRDSONG, Presiding Judge, concurring specially.

I agree with the majority opinion in all that it says.

In my opinion, the evidence in this case shows as a matter of law that the appellant acted in good faith. After the accident happened, an adjuster was notified and given the facts in this case that Johnson had been hit by a Lincoln Continental which had been struck by a Volkswagen insured by the appellant insurance company. The adjuster was assured by the owner of the Continental that Travelers Insurance Co. carried the insurance on the Continental. This was shown on the police report as well.

The adjuster checked the policy issued by appellant and came to the conclusion that there was no liability under appellant's policy, that the carrier for the Lincoln, which struck Johnson, should be lia-

ble. In an abundance of caution, the adjuster contacted his supervisor as to his opinion as to coverage. Both felt there was no coverage; however, since a claim for PIP had been filed they felt a legal opinion was necessary and an attorney was called. The attorney felt that there was no coverage and the supervisor requested an opinion from the attorney in writing. The attorney mailed a letter stating in his opinion that there was no coverage.

The claims supervisor then called the attorney representing appellee and advised him of the company's position (this was March 24, 1982) suggesting that the claim should be filed with the insurance carrier of the Lincoln.

On April 20, 1982, the adjuster received medical bills from the owner of the Lincoln and was advised, for the first time, that the Lincoln was not insured by Travelers. The supervisor began his own investigation and found for the first time that appellant did indeed insure the Lincoln. The attorney for appellee was immediately notified that the claim would be paid by appellant; this was refused.

In discussing the case with the supervisor, the appellant's attorney advised that in his opinion the policy of the Volkswagen did not cover appellee and the attorney further advised the supervisor that he had found no Georgia cases that covered the situation in dispute. He further stated that New York and Florida "reached contrary results under somewhat different situations. However, these cases were decided under different statutory schemes, and I doubt whether a Georgia court would follow them in light of our statute and the cases cited above."

At this time and to this date, there are no Georgia cases which have been decided on this very point. It is true that there was a case in the United States District Court (N.D. Ga.), *Southern Guaranty Ins. Co. v. Berry*, 560 FSupp. 901 (1983) which construed a case under similar circumstances and which today we use to affirm coverage under the Horne policy; however, this case was not decided until April 15, 1983, approximately one year after coverage was denied in the instant case. There were no Georgia cases, federal or state, on April 20, 1982, which could give guidance as to how a Georgia appellate court would hold.

In view of the evidence in this case, it follows as a matter of law that the statutory penalties, attorney fees, and punitive damages awarded appellee should be written off. See *Cotton States Mut. Ins. Co. v. McFather*, 251 Ga. 739, 743 (309 SE2d 799); *Atlanta Cas. Co. v. Jones*, 247 Ga. 238, 241 (275 SE2d 328); *Colonial Life &c. Ins. Co. v. McClain*, 243 Ga. 263, 265 (253 SE2d 745).

I am authorized to state that Presiding Judge McMurray and Judge Pope join in this special concurrence.

BEASLEY, Judge, concurring specially.

I agree fully with Divisions 2 and 3 of the majority opinion and with Presiding Judge Birdsong's special concurrence, except that I cannot agree with him in all that the majority says in Division 1.

I am in accord with construing the statutory language as meaning that "struck by the owner's motor vehicle" embraces more than instances of actual physical contact between the vehicle and the pedestrian. However, I am troubled by the broad notion that coverage would extend whenever the vehicle "set in motion a chain of events leading up to" the striking of the pedestrian. A chain of *events* could include intervening happenings brought about by other persons' acts or by natural occurrences, which would weaken or remove the proximate cause element. So, for example, the insured vehicle might strike another vehicle, and the driver of that vehicle reacts negligently so as to cause injury to a pedestrian.

But when an insured vehicle strikes an object and makes of it a projectile which hits a pedestrian because of the energy and direction infused into it by the striking vehicle, it can be concluded logically that the pedestrian was struck by the insured vehicle, in the contemplation of the statute. It is the relationship between the vehicle and the pedestrian that is crucial. When they are connected by an object which strikes the pedestrian because of the action of the vehicle, the insured would be liable. That would be true whether the object was a stone or another vehicle. That is what occurred here. I would go no farther in this case.

I am authorized to state that Presiding Judge Deen joins in this special concurrence.

CARLEY, Judge, dissenting in part.

I totally agree with Division 1 of the majority opinion and the holding that the trial court correctly submitted to the jury the issue of the insurer's liability. I also concur in Division 3 finding that the insured has shown no reason to reverse the judgment. However, I disagree with Division 2 of the majority opinion finding that the trial court erred in denying the insurer's motion for directed verdict as to statutory penalties, attorney fees and punitive damages. Although the majority makes a passing reference to the Supreme Court's case of *Binns v. MARTA*, 250 Ga. 847 (301 SE2d 877) (1983), it is my opinion that the holding of Division 2 is totally inconsistent with the teaching of *Binns*. In *Binns*, the Supreme Court, in answering a certified question from this court, made it crystal clear that the standard of review of a jury award under OCGA § 33-34-6, the statute involved in this case, differs from the review criteria applicable to a jury award under OCGA § 33-4-6. In this connection, see this court's opinion resolving the issues before it in reliance upon the Supreme Court's instruction

in *Binns v. MARTA*, 250 Ga. 847, supra. *Binns v. MARTA*, 168 Ga. App. 261 (308 SE2d 674) (1983). As has been made clear by the Supreme Court, "[t]he burden of proving good faith is on the insurer. [Cit.] Good faith in this context requires a showing of reasonable or probable cause for not paying the claim on time. [Cit.] The question of the insurer's good faith (or lack thereof) is one of fact for the jury, and the jury's determination on this issue should be upheld on appeal if there is *any evidence* to support it. [Cits.] A jury award of [penalties, attorney fees and punitive damages] for wrongful refusal to pay a claim is thus entitled to great weight on appeal and should be disturbed *only if the evidence at trial does not support an inference of bad faith on the insurer's part.* [Cits.] Application of an 'any evidence' standard of review to § 33-34-6 (Code Ann. § 56-3406b) jury awards is consistent with the policy, previously recognized by this court, of encouraging prompt payment of no-fault insurance claims. [Cit.]" (Emphasis supplied.) *Binns v. MARTA*, 250 Ga. 847, supra at 848.

If the correct standard of review as above enunciated is applied so that the burden of proving good faith is upon the insurer, it is clear that this court should not interfere with the jury verdict in this case. The majority relies upon the fact that "this case is one of first impression in Georgia. . . ." "The mere fact that a proposition with respect to an insurance policy is a first impression issue does not, per se, vindicate the good faith of the company." *Georgia Farm &c. Ins. Co. v. Nelson*, 153 Ga. App. 623, 630 (266 SE2d 299) (1980). To the extent that this court's decision in *Government Employees Ins. Co. v. Presley*, 174 Ga. App. 562 (330 SE2d 779) (1985), relied upon by the majority, is inconsistent with the correct review standard above discussed, it must yield to the holding of the Supreme Court in *Binns*, supra. I believe that there was sufficient evidence to support the jury verdict for statutory penalties, attorney fees and punitive damages and I believe that the judgment of the trial court should be affirmed in its entirety.

DECIDED NOVEMBER 7, 1985 —
REHEARING DENIED DECEMBER 9, 1985 —

*Sammy J. Hawkins*, for appellant.
*Edgar S. Mangiafico, Jr.*, for appellee.