660 A.2d 929

**MARYLAND AUTOMOBILE INSURANCE FUND**

v.

**ERIE INSURANCE EXCHANGE.**

**No. 1089, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

June 28, 1995.

Christopher A. Conte (Lipshultz and Hone, Chartered, on the brief), Silver Spring, for appellant.

C. Elliott Wilson, III (McCarthy, Wilson & Ethridge, on the brief), Rockville, for appellee.

Argued before WILNER, C.J., and FISCHER, and SALMON, JJ.

SALMON, Judge.

The issue presented in this case is one of first impression. It requires us to interpret and implement Md.Code (1957, 1994 Repl.Vol.), Art. 48A, § 543. Article 48A,[1] § 543, deals, *inter alia*, with the coordination of insurance policies providing for personal injury protection ("PIP") benefits under circumstances where two insurance policies potentially provide PIP benefits for the same injured party. The facts that give rise to this litigation are simple and undisputed.

## FACTS

Samoil Fink was, on October 13, 1990, insured under an automobile insurance policy issued by Erie Insurance Exchange ("Erie"). On that same date, Bradley Wilson was insured under an automobile insurance policy issued by the Maryland Automobile Insurance Fund ("MAIF"). The automobile insurance policies issued by both Erie and MAIF provided for the payment of PIP benefits, pursuant to § 539, in the maximum amount of $2,500 each.

On October 13, 1990, a taxicab, registered in Virginia, was stalled on the Washington Beltway. The stalled vehicle was

---

1. The Maryland Insurance Code is set forth in Art. 48A. All Code sections cited in this opinion refer to Art. 48A.

not required to, and did not, have PIP coverage. Mr. Wilson, driving a Chevrolet Cavalier, collided with the rear of the stationary taxicab, and the force of that collision propelled the taxicab into Mr. Fink, who was standing nearby. There was no physical contact between Mr. Wilson's vehicle and Mr. Fink. As a result of the collision, Mr. Fink sustained injuries resulting in medical bills and other expenses (covered by PIP) in excess of $2,500. Erie paid Mr. Fink $2,500 and then brought the subject action asking the Circuit Court for Montgomery County to enter judgment in its favor against MAIF for $2,500 and declare: 1) that MAIF "is the primary provider of" PIP benefits to Mr. Fink for the October 13, 1990 accident, and 2) that MAIF was obligated to re-pay Erie for the PIP benefits paid to Mr. Fink.

Both Erie and MAIF moved for summary judgment based on the facts set forth above. After hearing oral argument, the trial judge (Miller, J.) granted judgment in favor of Erie in the amount of $2,500 and declared that MAIF and not Erie was obligated to pay Mr. Fink PIP benefits as a result of the subject accident. MAIF then filed this timely appeal.

### QUESTION PRESENTED

MAIF presents one question:
Whether payment of a PIP claim to a pedestrian must be made by the insurer of a vehicle with PIP coverage that strikes another vehicle without PIP coverage that in turn strikes the pedestrian, rather than by the pedestrian's own PIP carrier.

### DISCUSSION

Section 539 provides, with exceptions not here relevant, that all policies of motor vehicle liability insurance issued in Maryland shall afford minimum benefits up to $2,500 (PIP benefits) for the named insured and other "designated individuals" injured as a result of a motor vehicle accident. Under Maryland's statutory scheme, PIP payments are payable without regard to "fault or non-fault of the named insured or the

recipient in causing or contributing to the accident." § 540(a)(1). Among the "designated individuals" eligible to receive PIP benefits are "[p]edestrians injured in an accident in which the insured vehicle is involved." § 539(b)(3).

Section 538 defines "accident" as "any occurrence *involving a motor vehicle,* other than an occurrence caused intentionally by or at the direction of the insured, from which damage to any property or injury to any person results." (Emphasis added). This definition of "accident" is applicable to §§ 538–546.

Section 543, designated "[d]uplication of benefits; coordination of benefits," specifies that PIP benefits shall not be recovered "from more than one motor vehicle liability policy or insurer on either a duplicative or supplemental basis." § 543(a). Where there is potential coverage by more than one insurer, § 543(b) and (c) establish which insurer is liable for payment of PIP benefits.

Section 543(b)(1), reads:

> ***Benefits payable by insurer of vehicle; exception.***—(1) As to any person injured in an accident while occupying a motor vehicle for which the coverage described under § 539 of this subtitle is in effect, ***and as to any person injured by such a motor vehicle as a pedestrian*** or while in, on, or alighting from any other vehicle powered by animal or muscular power, or on or alighting from an animal, the benefits shall be payable by the insurer of the motor vehicle.

(Emphasis added).

Broken into its components, Section 543(b)(1) envisions four different scenarios:

1. A person is injured in an accident while occupying a motor vehicle covered by an insurance policy containing PIP;

2. *A person is injured as a pedestrian by a motor vehicle covered by an insurance policy containing PIP;*

3. A person is injured while in, on or alighting from any other vehicle powered by animal or muscular power, by a motor vehicle covered by a policy containing PIP; and

4. A person is injured while on or alighting from an animal by a motor vehicle covered by a policy containing PIP.

Under any of these circumstances, the injured party recovers PIP from the insurer of the covered motor vehicle, not from his or her own personal automobile insurer. In other words, the PIP is said to "run with" or "follow" the motor vehicle.

Andrew Janquitto, *Maryland Motor Vehicle Insurance* 426 (2nd ed. 1991) (emphasis added).

Art. 48A, § 543(c), deals with coordination of policies providing PIP benefits under § 539, as well as coordination of uninsured motorist benefits under § 541. Section 543(c) reads as follows:

*Benefits payable by insured party's insurer.*—As to any person insured under a policy providing the coverage described under §§ 539 and 541 of this subtitle who is injured in an accident while occupying a motor vehicle for which the coverage described under §§ 539 and 541 of this subtitle is not in effect, or *struck as a pedestrian* or injured while in, on, or alighting from any other vehicle powered by animal or muscular power or on or alighting from an animal by a motor vehicle for *which the coverage described under §§ 539 and 541 of this subtitle* is not in effect, the benefits shall be payable by the injured party's insurer providing such coverage; provided, however, that such benefits shall be reduced to the extent of any medical or disability benefits coverage applicable to the motor vehicle and collectible from the insurer of such motor vehicle.

(Emphasis added).

As stated in *Maryland Motor Vehicle Insurance, supra,* at 427:

Section 543(c) sets up four different scenarios where the injured party collects from his or her own personal automobile insurance.

1. The injured party is injured while occupying a motor vehicle not protected by PIP and uninsured motorist coverage;

2. *The injured party is injured while struck as a pedestrian by a motor vehicle not protected by PIP an uninsured motorist coverage;*

3. The injured party is injured while in, on or alighting from any other vehicle powered by animal or muscular power by a motor vehicle not protected by PIP and uninsured motorist coverage; and

4. The injured party is injured while on or alighting from an animal by a motor vehicle [not] protected by PIP and uninsured motorist coverage.

In any of these circumstances, the injured party collects from his or her own insurer. *This is an inescapable conclusion, of course, because the injured party certainly cannot collect from the insurer of the motor vehicle causing the accident since that motor vehicle does not have either PIP or uninsured motorist coverage.* Simply put, the PIP and uninsured motorist coverage cannot "run" with the vehicle causing the harm because there is no insurance capable of running with that vehicle. Therefore, the injured party's insurance, by default, steps in to fill the gap.[2]

(Emphasis added).

In *Travelers Ins. Co. v. Benton,* 278 Md. 542, 546, 365 A.2d 1000 (1976), the Court summarized as follows:

As heretofore indicated, § 543(b) and (c) establish which insurer is liable for payment of PIP benefits. Where PIP

---

**2.** The emphasized portion of the last paragraph quoted from Maryland Motor Vehicle Law does not, of course, contemplate a case similar to the one *sub judice* where two vehicles are involved in the collision with the pedestrian—one with PIP coverage and one without such coverage.

coverage is "in effect" on the motor vehicle involved in the accident, the insurer of that vehicle is liable for payment; where such coverage "is not in effect," the injured person's insurer is liable for the PIP benefits....

The *Benton* Court did not say who would pay PIP benefits when two motor vehicles are "involved in the accident," one with PIP coverage "in effect" and one without PIP coverage.[3]

As it pertains to this case, § 543(b)(1) provides that a pedestrian *"injured by" a motor vehicle* with PIP coverage shall collect from the insurer of that vehicle. On the other hand, § 543(c) says that if a pedestrian is "struck by" *a motor vehicle* not covered by a policy containing PIP, then the pedestrian's own PIP carrier shall pay. Erie contends that MAIF should pay under § 543(b)(1) because a MAIF insured car, with PIP coverage, injured Mr. Fink. MAIF contends that 543(c) controls, and Erie should pay Mr. Fink's PIP benefits, because Erie is Mr. Fink's PIP carrier, and Mr. Fink was "struck by" a vehicle (the taxi cab) that was not covered by a policy containing PIP.

█ The first issue to be addressed is whether, within the meaning of § 543(c), the MAIF insured vehicle "struck" Mr. Fink. It is undisputed that the Wilson vehicle (insured by MAIF) did not make direct physical contact with Mr. Fink. "In common parlance [however] the word 'struck' is frequently used to denote a movement or a force causing or resulting in a physical impact." *Southern Guarantee Insurance Co. v. Berry,* 560 F.Supp. 901, 903 (1983).

In *Berry, supra,* two pedestrians stood in front of a parked pickup truck, which they were attempting to start. The pickup was struck in the rear by an Opel Manta, and the pickup was moved forward, pinning the two pedestrians between the pickup truck and a vehicle parked in front of the pickup. The Opel Manta was insured by Travelers Insurance

3. In *Benton,* plaintiff was injured in a one-car accident. The vehicle in which plaintiff was a passenger had PIP coverage. Additionally, an automobile liability policy issued to plaintiff provided PIP benefits under certain circumstances.

Company, and the case was governed by Georgia law. The Georgia Motor Vehicle Accident Reparations Act, O.G.C.A., provided:

> (a) The insurer of a motor vehicle with respect to which security is required by Code Section 33–4 shall pay basic no-fault benefits without regard to fault for economic loss resulting from ... (3) Accidental bodily injury sustained by any other person as a result of being struck by the owner's motor vehicle while a pedestrian in this state.

The controversy in *Berry* was whether the pedestrians were "struck by" the moving Opel Manta or the stationary pickup, which was insured by Southern Guaranty Insurance Co. *Id.*, 560 at F.Supp. 902. The *Berry* Court held that both vehicles "struck" the pedestrian. The Court, in discussing the meaning of the term "struck," said, 560 F.Supp. at 903:

> The "striking" force can be either the force which most immediately comes in contact with the object struck, or it can be the force setting in motion a chain of events leading up to the striking of an object. Were this court to accept Travelers' argument that the moving car cannot have "struck" [the pedestrians] because it never physically touched them, this court would be straining the meaning of these words far beyond their ordinary and logical usage in order to achieve a wholly impractical and inequitable result.

The Court went on to hold that since both vehicles "struck" the injured pedestrians, then, under the Georgia statute, both should pay PIP benefits.

In *Johnson v. National Union Fire Ins. Co.*, 177 Ga.App. 204, 338 S.E.2d 687, 689 (1985), the Georgia Supreme Court addressed the issue of the meaning of "struck" as used in Georgia's O.G.C.A. statute. In *Johnson*, a Volkswagen struck a parked Lincoln, and the force of the impact propelled the Lincoln into a pedestrian, who was injured. The *Johnson*

Court adopted the reasoning of *Berry, supra,* and held National Union (the Volkswagen's insurer) responsible.[4]

The Court said, 338 S.E.2d at 689:

[W]e hold that one can be "struck by" an automobile for the purpose of the application of OGCA § 33–34–7(a)(3) without actually coming into physical contact with the automobile itself. Thus, viewing the uncontroverted evidence that National Union's insured's vehicle was the force which set in motion the chain of events leading up to the striking of Johnson, the evidence supports the jury's verdict and the trial court did not err by denying National Union's motion for directed verdict on the issue of its liability as the insurer of the Volkswagen. See generally, *White Repair etc. Co. v. Daniel,* 171 Ga.App. 501, 503(1), 320 S.E.2d 305 (1984). . . .

Regarding the issue of whether a vehicle that did not make physical contact with the pedestrian but nevertheless "struck" him, the concurring decision in *Johnson* aptly stated:

[W]hen an insured vehicle strikes an object and makes of it a projectile which hits a pedestrian because of the energy and direction infused into it by the striking vehicle, it can be concluded logically that the pedestrian was struck by the insured vehicle, in the contemplation of the statute. It is the relationship between the vehicle and the pedestrian than is crucial. When they are connected by an object which strikes the pedestrian because of the action of the vehicle, the insured would be liable.

*Id.,* 338 S.E.2d at 692 (Birdsong, J., concurring).

Most courts that have considered the issue have held that a pedestrian can be "struck by" a vehicle without having physical contact with that vehicle. *Atlanta Casualty v. Tucker,* 204 Ga.App. 584, 420 S.E.2d 344 (1992); *Miller v. U.S. Fidelity & Guar. Ins. Co.,* 112 Idaho 955, 738 P.2d 425, 427 (App.1987)

---

**4.** In *Johnson,* 338 S.E.2d at 689, the Court of Appeals of Georgia specifically reserved judgment on whether the *Berry* decision was correct in saying that both carriers should pay PIP benefits. There was no need to decide the issue because both vehicles had the same insurance carrier.

(term "struck" includes indirect physical contact that occurs when an automobile knocks an intermediate object into the pedestrian); *DeBerry v. American Motorist Insurance Company,* 33 N.C.App. 639, 236 S.E.2d 380 (1977); *Royal Indemnity Co. v. GEICO,* 307 So.2d 458 (Fla.App.1975); *Bates v. United Security Insurance Co.,* 163 N.W.2d 390 (Iowa 1968). *See also, Anno. Automobile Insurance: Construction of Medical Payments. Insurance provisions covering injuries incurred when "struck by" automobile,* 33 ALR 3rd 962, 966 (1970) ("Although there is some authority to the contrary, many courts have held that the proper interpretation of struck by provisions in insurance policies affording coverage for injuries inflicted by motor vehicle is that physical contact of the insured's body with the offending vehicle is not a prerequisite to recovery...."). *But see, State Farm Mutual v. Ky. Farm Mutual Insurance Co.,* 671 S.W.2d 258 (Ky.App.1984) (Kentucky PIP Statute providing that insurer of "the vehicle **which struck such pedestrian**" will provide PIP benefits requires that the vehicle physically strike the pedestrian for there to be PIP coverage).

Turning to the Maryland statutory scheme for coordinating benefits, we believe that the legislature intended the term "struck by" as used in § 543(c) to encompass not only actual physical contact but also "a force causing or resulting in physical contact."

"The polestar of the statutory interpretation is to find and carry out the legislative intent of a statute." *Harbor Island Marina v. Calvert Co.,* 286 Md. 303, 311, 407 A.2d 738 (1979). In seeking to establish legislative intent, the court "may consider the consequences resulting from one meaning rather than another, and adopt that construction which avoids an illogical or unreasonable result, or one which is inconsistent with common sense." *Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 75, 517 A.2d 730 (1986).

As already noted, § 543(c) deals with coordination of uninsured motorist benefits as well as PIP benefits. If we interpreted the word "struck" to mean actual physical contact,

situations would arise in which the statute would be silent as to who, if anyone, should pay uninsured motorist benefits. Suppose an uninsured motorist's car negligently strikes an inanimate object that is propelled into, and injures, a pedestrian. Suppose, further, that the uninsured car does not physically strike the pedestrian. If the word struck means that the uninsured vehicle has physical contact with the pedestrian, then § 543(c) would be inapplicable even if the pedestrian had uninsured motorist coverage under his own policy. We do not believe that the legislature intended to leave pedestrians injured by uninsured motorists in such a legal limbo because the purpose of uninsured motorist coverage is to allow injured victims of uninsured motorists' negligence to collect to the same extent as if the uninsured motorist had minimum ($20,-000 per person) coverage. *Nationwide Insurance Co. v. Webb*, 291 Md. 721, 736, 436 A.2d 465 (1978).

If MAIF's interpretation were to obtain, there would likewise be situations where no carrier would be required to pay PIP benefits under § 543(b)(1). Using basically the same hypothetical set of facts, suppose a pedestrian were standing near a newsstand and an automobile, without PIP coverage, goes out of control and strikes the newsstand, which is propelled into the pedestrian. If the automobile with no PIP coverage in effect has no physical contact with the pedestrian, then, under MAIF's construction, § 543(b)(1) would be inapplicable because the pedestrian was not "injured by" a vehicle that had PIP coverage. Section 543(c) likewise would be inapplicable (under MAIF's thesis) even if the pedestrian had a motor vehicle insurance policy providing PIP coverage because the pedestrian would not be considered to have been "struck by" a vehicle without PIP coverage. This would be an unreasonable result and one that would not comport with the remedial purpose of the PIP statute, which is "to assure financial compensation to victims of motor vehicle accidents without regard to the fault of a named insured or other person entitled to PIP benefits." *Tucker*, 308 Md. at 75, 517 A.2d 730, *quoting Pennsylvania Nat'l Mut. v. Gartelman*, 288 Md. 151, 154, 416 A.2d 734 (1980).

Having established that the Wilson vehicle "struck" Mr. Fink, the question then becomes whether § 543(c) is applicable. For § 543(c) to be applicable, it must be shown that Mr. Fink was "struck as a pedestrian" by a *motor vehicle* without PIP coverage. Mr. Fink was "struck" and injured by two vehicles, one with PIP coverage and one without such coverage.

Section 543(c) is ambiguous and does not resolve the issue as to which carrier should pay PIP benefits where one but not both of the striking vehicles has PIP coverage. On the other hand, § 543(b)(1) clearly and unambiguously resolves the issue. To reiterate, § 543(b)(1) provides: "As to any person injured in an accident while occupying a motor vehicle [for which PIP benefits are in effect] and as to any person injured by such a motor vehicle as a pedestrian . . ., the benefits shall be payable by the insurer of the motor vehicle." A construction of § 543(c) that conflicts with § 543(b)(1) should be avoided. *Holmes v. Criminal Injuries Compensation Board*, 278 Md. 60, 66, 359 A.2d 84 (1976) (all sections of a statute must be reconciled if it is reasonably possible to do so).

We reconcile § 543(b)(1) with § 543(c) by interpreting the statute as meaning that, if *any* vehicle that strikes and injures a pedestrian has PIP coverage in effect, the insurer of that vehicle should pay the injured pedestrian's PIP benefits. If none of the vehicles that strike the pedestrian has PIP coverage, then the pedestrian's own PIP carrier must pay the benefits.

In our view, the above interpretation comports with the legislature's intent. As the Court stated in *Benton, supra,* 268 Md. at 546, 365 A.2d 1000: "The legislature quite obviously intended that the provisions of § 543(c) would apply where either the mandated coverage did not exist or for any reason did not encompass the circumstances of a particular motor vehicle accident." Here, the mandated coverage did exist for one of the vehicles involved (the MAIF-insured Wilson auto) and that coverage fully encompassed the circumstances of Mr. Fink's accident.

For the above reasons, we hold that § 543(c) is inapplicable and, therefore, the trial judge was correct in granting summary judgment in favor of Erie and declaring that MAIF was liable to Mr. Fink for the PIP benefits.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**