677 A.2d 129

**NATIONWIDE MUTUAL INSURANCE COMPANY**

v.

**Edward SEITZ.**

**No. 1477, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

June 3, 1996.

356

Francis C. Lanasa, Annapolis, for Appellants.

John M. Quinn and Michael L. Rowan (Quinn, McAuliffe & Dumais, on the brief), Rockville, for Appellee.

Argued Before MOYLAN, WENNER and HOLLANDER, JJ.

HOLLANDER, Judge.

Edward Seitz, appellee, was seriously injured when two vehicles collided, one of which was insured by Nationwide Mutual Insurance Company, appellant, and the other of which was insured by Allstate Insurance Company. In this appeal, we are asked to decide whether one or both insurers are obligated to pay Personal Injury Protection ("PIP") benefits to Seitz. Nationwide argues that only Allstate is liable, even though Allstate's PIP policy limit is considerably less than the limit in Nationwide's policy. Seitz asserts that he is entitled to recover the larger policy amount, either from Nationwide alone or from both insurers. We agree with the Circuit Court for Montgomery County that Seitz is entitled to recover from both Nationwide and Allstate, in an amount not to exceed Nationwide's policy limit.[1]

The facts are undisputed. On December 25, 1993, Seitz was driving his vehicle on Dorsey Road in Anne Arundel County when he was struck from behind by a vehicle owned by Richard Ward and driven by Eric Ward ("the Ward vehicle").

---

[1]. Prior to the commencement of the proceedings below, Allstate offered to pay Seitz its PIP policy limits. Therefore, it did not attend the Circuit Court hearing and it has not participated in this appeal.

Seitz was insured under a motor vehicle insurance policy issued to him by Allstate Insurance Company, which contained a provision for PIP benefits in the amount of $2,500. The Ward vehicle was insured by Nationwide, and the applicable policy contained a provision for PIP benefits in the amount of $10,000.

After the collision, Seitz stepped out of his vehicle to assess the damage. Shortly thereafter, a third vehicle, owned and operated by Michelle Foster, struck the Ward vehicle from behind and propelled it into Seitz. The Foster vehicle was also insured under a policy issued by Allstate; it contained a provision for PIP benefits in the amount of $2,500. Seitz was injured and incurred medical expenses well in excess of $10,-000.

Seitz filed a declaratory judgment action in the circuit court to determine the rights and responsibilities of Nationwide and Allstate with respect to the PIP endorsements for the Ward and Foster vehicles. Seitz did not argue that he is entitled to the aggregate maximum coverage from both carriers, i.e., $12,500. Instead, Seitz contended that he was entitled to a total of $10,000, either from Nationwide alone or from both Nationwide and Allstate, because $10,000 constitutes the larger of the two PIP policy limits.[2]

After a hearing, the circuit court found that both Nationwide and Allstate were liable to Seitz. At Nationwide's request, when the court determined that Nationwide was obligated to pay, the circuit court applied the "other insurance" clause in the Nationwide PIP endorsement. It then determined that Nationwide was liable in the amount of $8,000 and that Allstate was liable in the amount of $2,000.[3] The "other insurance" clause provided:

---

2. Although Allstate tendered its policy limits of $2,500 to Seitz prior to trial, Seitz did not accept the check, for fear of prejudicing any rights that he might have against Nationwide.

3. After oral argument, we granted appellee's Motion to Revise Docket Entries to reflect accurately the trial and judgment. The corrected docket entries reflect only the judgment in the amount of $8,000 against

In the event the injured person has other optional Personal Injury Protection insurance available and applicable to the accident, the maximum recovery under all such insurance shall not exceed the amount which would have been payable under the provisions of the insurance providing the highest dollar limit, and the Company [Nationwide] shall not be liable for a greater proportion of any loss to which this coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of this coverage and all other such insurance.[ [4] ]

Nationwide now appeals, and presents a single question for our consideration:

Whether payment of a PIP claim must be made by both the insurer of a vehicle that strikes another vehicle, propelling it into a pedestrian and the insurer of the vehicle that is struck and propelled into a pedestrian, rather than only the insurer of the vehicle striking another vehicle and propelling it into a pedestrian?

## DISCUSSION

The issue presented requires us to analyze various interlocking provisions of Article 48A of the Annotated Code of Maryland (1957, 1994 Repl.Vol. and Supp.1995).[5] Article 48A, § 539(a) requires that all motor vehicle insurance policies

---

Nationwide. The trial transcript reflects, however, that the trial judge declared both insurers "responsible," that Nationwide was obligated to pay $8,000 to Seitz, and that Allstate was obligated to pay "an additional $2,000...."

4. Under the "other insurance" clause, the "maximum recovery" for Seitz is the greater of the policy limits, or $10,000. Nationwide's share of this figure is equal to the ratio of its coverage limit ($10,000) to the sum total of all coverage limits ($12,500), or 80%. Accordingly, the court fixed Nationwide's share at $8,000, which equals 80% of the maximum recovery of $10,000. While Nationwide disputes its liability, it does not challenge the trial court's calculation of the amount of the carriers' respective liabilities under this clause.

5. Hereinafter, unless otherwise noted, all statutory references shall be to Article 48A.

issued in this State "provide coverage for the medical, hospital, and disability benefits set forth in this section," unless the insured makes a valid waiver of the coverage. The coverage required by § 539 is colloquially referred to as "Personal Injury Protection" or "PIP coverage." PIP coverage is entirely "no-fault" insurance. Section 540(a)(1) provides that PIP benefits "shall be payable without regard to . . . [t]he fault or nonfault of the named insured or the recipient in causing or contributing to the accident."

When the Foster vehicle struck the Ward vehicle and propelled the Ward vehicle into Seitz, an "accident" occurred within the meaning of § 538. Section 538 defines "accident" as "any occurrence involving a motor vehicle, other than an occurrence caused intentionally by or at the direction of the insured, from which damage to any property or injury to any person results." Moreover, § 539(b) enumerates the persons protected by PIP coverage. Among these individuals are "[p]edestrians injured in an accident in which the insured motor vehicle is involved." § 539(b)(3). The parties agree that Seitz, who had exited his vehicle after the first accident, was a "pedestrian" when he was struck during the next accident. *See Tucker v. Fireman's Fund Insurance Co.*, 308 Md. 69, 78, 517 A.2d 730 (1986) (General Assembly "intended to include as a 'pedestrian' under § 539 all persons not occupying, entering, or alighting from a motor or other covered vehicle without regard to whether, when struck, they were actually travelling on foot, standing in a stationary position, sitting, or . . . within some structure"). Further, since the Ward vehicle was the object that struck and injured Seitz, it was clearly "involved" in the accident within the meaning of § 539(b)(3). Thus, under that statute, Seitz, as a pedestrian, was among the designated individuals covered by the PIP endorsements of both the Nationwide and Allstate policies. Seitz was, within the terms of the statute, a "[p]edestrian injured in an accident in which the insured motor vehicle was involved."

Section 543(a) prohibits duplicative recovery of PIP benefits. It provides, in pertinent part: "Notwithstanding any

other provision of this subtitle, no person shall recover benefits under the coverage described in [§ 539] of this subtitle from more than one motor vehicle liability policy or insurer on either a duplicative or supplemental basis." Other subsections of § 543 govern the coordination of policies when more than one PIP policy might provide coverage for a particular insured. Moreover, § 543(b)(1) states, in relevant part: "As to any person injured in any accident while occupying a motor vehicle for which the coverage described under § 539 of this subtitle is in effect, *and as to any person injured by such a motor vehicle as a pedestrian ...*, the benefits shall be payable by the insurer of the motor vehicle." (Emphasis supplied).

As we noted, Seitz does not seek to recover the aggregate of PIP benefits under each policy, which would total $12,500. Rather, he contends that he is entitled to recovery of $10,000, because that is the larger of the two policy limits for PIP benefits and his medical bills exceed $10,000. Understandably, it does not seem to matter to him if he recovers from Nationwide alone or from Nationwide and Allstate together.

■ Nationwide advances several arguments to support its claim that it has no obligation to pay PIP benefits. First, Nationwide argues that Seitz was not really "injured by" its insured vehicle within the meaning of § 543(b)(1). In Nationwide's view, this is because the Ward vehicle "was merely a projectile propelled into Seitz" by the Foster vehicle. As a "projectile" or inanimate object knocked into Seitz, the Ward vehicle, according to Nationwide, did not "injure" Seitz.

This argument is not well taken. The facts of this case indicate that the Ward vehicle was not simply an "innocent" vehicle turned into a projectile by another driver. To the contrary, the Ward vehicle had been involved in an accident with Seitz before the Foster vehicle was ever involved. Indeed, it was because of that accident that Seitz exited his vehicle to inspect the damage and was then injured when the Foster vehicle collided with Ward's car.

■ Moreover, whether the Ward vehicle was a mere "projectile" or was being driven at the time is completely irrelevant under the statutory scheme. Section 538(b) defines "motor vehicle," in pertinent part, as an "automobile and any other vehicle ... operated *or designed for operation* upon a public road by any power other than animal or muscular power...." (Emphasis supplied). While the Ward vehicle was in a stationary position at the time the Foster vehicle struck it, it retained its status as a motor vehicle, because it was "designed for operation" on the public roads. In addition, contrary to Nationwide's suggestion, it is obvious that Seitz was "injured by" the Ward vehicle within the meaning of § 543(b)(1), because the Ward vehicle came into contact with him. While there may be one or more forces that combine to cause an injury, *Atlantic Mutual Insurance Co. v. Kenney*, 323 Md. 116, 127, 591 A.2d 507 (1991); *Karns v. Liquid Carbonic Corp.*, 275 Md. 1, 20, 338 A.2d 251 (1975), what *caused* the Ward vehicle to strike him is not relevant.

This view is supported by the no-fault nature of PIP coverage, codified in § 540(a)(1). The purpose of the PIP legislation was "to put a limited amount of money in the hands of an injured individual under certain circumstances without regard to whether another person is liable for the injuries which the claimant sustained." *Smelser v. Criterion Insurance Co.*, 293 Md. 384, 393, 444 A.2d 1024 (1982). It is thus intended "to assure financial compensation to victims of motor vehicle accidents *without regard to the fault* of a named insured or other persons entitled to PIP benefits." *Pennsylvania National Mutual Casualty Insurance Co. v. Gartelman*, 288 Md. 151, 154, 416 A.2d 734 (1980) (emphasis supplied). Consequently, whether the owner or operator of the Nationwide vehicle was at fault for Seitz's injuries is immaterial. The Nationwide vehicle struck Seitz and caused his injuries.

Nationwide also argues, based on our recent decision in *Maryland Automobile Insurance Fund v. Erie Insurance Exchange*, 105 Md.App. 377, 660 A.2d 929 (1995), that Seitz is only entitled to receive PIP benefits from Allstate, as the insurer of the Foster vehicle. In *Erie*, as in the case at bar,

Car *A* struck Car *B*, propelling Car *B* into Pedestrian *P*. A critical factual difference from the present case, however, was that Car *B* in *Erie* was a Virginia vehicle that did not have PIP coverage. *Erie* thus was a dispute between the insurer of Car *A*, which had knocked the second vehicle into the pedestrian, and the pedestrian's own automobile insurer. In addition to § 543(b)(1), we had to analyze the situation in light of § 543(c), a separate coordination of policies provision. Section 543(c) pertains to situations when an injured party receives PIP benefits from his or her own motor vehicle insurance carrier. The statute provides, in relevant part: "As to any person insured under a policy providing [PIP coverage] who is ... *struck as a pedestrian* ... *by a motor vehicle for which [PIP coverage] is **not** in effect*, the benefits shall be payable by the injured party's insurer providing such coverage...." (Emphasis supplied).

The main issue in *Erie* concerned the meaning of the words "struck ... by" in § 543(c). The insurer of Car *A* contended that the pedestrian had been "struck by" a vehicle without PIP coverage (Car *B* ) and, therefore, under § 543(c), the pedestrian's own insurer was responsible for the PIP benefits. The pedestrian's insurer countered that Car *A* 's carrier was responsible under § 543(b)(1), because the pedestrian had been "injured by" Car *A*, which had PIP coverage.

We affirmed a judgment in favor of the pedestrian's insurer. We held that § 543(c) was inapplicable to the case, because the pedestrian had been "struck by" a vehicle *with* PIP coverage—Car *A*. We reached this conclusion by interpreting the word "struck" as encompassing "not only actual physical contact but also a force causing or resulting in physical contact." 105 Md.App. at 386, 660 A.2d 929 (internal quotation marks omitted). Since Car *A* had applied a force that caused another object to make physical contact with the pedestrian, we concluded that Car *A* had "struck" the pedestrian. We then reconciled §§ 543(b)(1) and 543(c) by interpreting § 543(c) as applying only when *none* of the vehicles that strikes the pedestrian has PIP coverage. 105 Md.App. at 388, 660 A.2d 929. Since that circumstance was not present,

we held that § 543(c) was inapplicable, that § 543(b)(1) controlled, and that Car *A*'s insurer, as the insurer of a vehicle that had "injured" the pedestrian, was responsible for the pedestrian's PIP benefits. 105 Md.App. at 388–89, 660 A.2d 929.

Nationwide reads *Erie* as standing for the broad proposition that, in *any* situation in which Car *A* hits Car *B* into Pedestrian *P*, Car *A* is *always* deemed to be the vehicle that "struck" or "injured" *P* and that, therefore, Car *B*'s insurer is never responsible for paying the pedestrian PIP benefits. Nothing in *Erie* can be read as suggesting such a result. Indeed, that result would be clearly at odds with the statutory language, and our opinion in *Erie* indicates quite the contrary.

We said in *Erie* that the term "struck ... by" in § 543(c) *includes* a situation in which a car strikes another object and propels it into a pedestrian. We stated: "[W]e believe that the legislature intended the term 'struck by' as used in § 543(c) to encompass *not only* actual physical. contact *but also* a force causing or resulting in physical contact." 105 Md.App. at 386, 660 A.2d 929 (emphasis supplied). We never stated that actual physical contact by a car against a person was not encompassed in the term "struck by."

In short, *Erie* involved a situation in which *two* vehicles had "struck" the pedestrian. We resolved the potential conflict between §§ 543(b)(1) and 543(c) by holding that "if *any* vehicle that strikes and injures a pedestrian has PIP coverage in effect, the insurer of that vehicle should pay the injured pedestrian's PIP benefits." 105 Md.App. at 388, 660 A.2d 929 (emphasis in original). As one of the vehicles that had struck the pedestrian—Car *A*—had PIP coverage, we determined that that vehicle's insurer was responsible to pay PIP benefits to the pedestrian.

Applying *Erie* here, it is apparent that Seitz was "injured" by the Foster vehicle, which was insured by Allstate (Car *A* ). But Seitz was also "injured" by the Ward vehicle, insured by Nationwide (Car *B* ). Thus, under § 543(b)(1), both Nationwide and Allstate are obligated to pay PIP benefits to Seitz.

■ Nationwide also suggests that Seitz cannot recover from it because of the prohibition against duplicative or supplemental recovery of PIP benefits in § 543(a). It appears to argue that an injured pedestrian may not recover PIP benefits from two insurers at the same time. Of course, this view would render meaningless the "other insurance" clause in the Nationwide PIP endorsement, which clearly contemplates situations in which an insured recovers PIP benefits from two insurers. But Nationwide bases its argument on § 543(a), and if there is a conflict between a PIP policy provision and the PIP statute, the statute will control. *See Nationwide Mutual Insurance Co. v. United States Fidelity & Guaranty Co.*, 314 Md. 131, 135, 550 A.2d 69 (1988) (if automobile insurance policy omits or excludes coverage required by law, omission or exclusion is ineffective); *Keystone Mutual Casualty Co. of Pittsburgh v. Hinds*, 180 Md. 676, 679, 26 A.2d 761 (1942). Therefore, we shall analyze this issue in light of the statutory provision.

■ It is plain from the language of the statute that § 543(a) does not create a blanket prohibition against recovering PIP benefits from more than one insurer. *See* Andrew Janquitto, MARYLAND MOTOR VEHICLE INSURANCE § 9.16(A) at 421 (1992). Instead, it only prohibits the recovery of PIP benefits from more than one policy or insurer "on either a duplicative or supplemental basis." "Absent a clear indication to the contrary, a statute, if reasonably possible, is to be read so that no work, clause, sentence or phrase is rendered surplusage, superfluous, meaningless, or nugatory." *Management Personnel Services, Inc. v. Sandefur*, 300 Md. 332, 341, 478 A.2d 310 (1984). The question, then, is the meaning of the terms "duplicative" and "supplemental" in § 543(a).

In *Travelers Insurance Co. v. Benton*, 278 Md. 542, 365 A.2d 1000 (1976), the Court of Appeals applied § 543(a) in a dispute concerning PIP benefits. Elizabeth Benton was injured when the vehicle in which she was riding struck a bridge abutment. The vehicle was insured by the Maryland Automobile Insurance Fund, which provided PIP coverage up to

$2,500, the statutory minimum. Benton was also the named insured under her own policy issued by Travelers, which provided PIP coverage up to $2,500. Benton incurred more than $5,000 in medical expenses and received $2,500 in PIP benefits from MAIF. But she also sought to recover under her policy with Travelers.

In denying her PIP claim, Travelers relied on two exclusions in the policy. The first stated that PIP coverage did not apply "to bodily injury sustained by any person ... while occupying ... any motor vehicle, other than an insured motor vehicle, for which the coverage required under Section 539 of the ... Code is in effect." The second exclusion provided: "No person may recover benefits as prescribed by law and afforded under this insurance from more than one motor vehicle liability insurance policy on either a duplicative or supplemental basis."

The Court upheld the validity of the exclusions in the Travelers policy, relying heavily on the coordination of policies provisions in § 543(b) and (c), which mandate that PIP coverage ordinarily "runs" with the vehicle. The Court stated:

> The statutory plan making PIP coverage mandatory on a "no-fault basis" plainly requires that all motor vehicles registered in Maryland shall carry such insurance. As a consequence, whenever a person qualifying as an insured under his own motor vehicle liability policy is riding as a passenger in another vehicle registered in Maryland, PIP coverage potentially exists under both policies.

278 Md. at 545, 365 A.2d 1000. The Court resolved this potential "dual" coverage by applying § 543(a):

> The coordination of benefits provision contained in § 543 specifies that recovery shall be under one, but not both policies; it says in no uncertain terms that no person shall recover PIP benefits "from more than one motor vehicle liability policy or insurer on either a duplicative or supplemental basis." As heretofore indicated, § 543(b) and (c) establish which insurer is liable for payment of PIP benefits. Where PIP coverage is "in effect" on the motor vehicle

involved in the accident, the insurer of that vehicle is liable for payment; where such coverage "is not in effect," the injured person's insurer is liable for the PIP benefits. Travelers' PIP endorsement closely tracks the language of the statute and is entirely consistent with it.

278 Md. at 545–46, 365 A.2d 1000. Accordingly, the Court held that Benton was only entitled to receive PIP benefits from the insurer of the vehicle in which she had been riding.

Andrew Janquitto, in his book MARYLAND MOTOR VEHICLE INSURANCE, *supra,* cautions against interpreting *Benton* too broadly. He writes:

> Although *Benton* appears, at first blush, to prohibit recovery under more than one policy, this is not the case. *Benton* cannot be, and must not be, understood as a carte blanche prohibition of recovery from more than one policy. What Section 543(a) prohibits is cumulative adding of required basic minimum coverages.

MARYLAND MOTOR VEHICLE INSURANCE, § 9.16(A) at 421. Janquitto takes the position that § 543(a) was intended "to prevent what is often called the 'stacking' of coverages——that is, it is designed to assure that the injured party is compensated but at the same time to prevent the injured party from turning the accident into a profit." *Id.,* § 9.16(A) at 419. *But cf.* BLACK'S LAW DICTIONARY 1403 (6th ed.1990) (defining "stacking" as the "ability of insured, when covered by more than one insurance policy, to obtain benefits from second policy on same claim when recovery from first policy alone would be inadequate").

Janquitto provides the following example of impermissible stacking:

> [A] pedestrian is injured by a vehicle with $2,500 PIP [the statutory minimum]. The pedestrian also has a policy that provides him with $2,500 PIP. The pedestrian cannot recover both the other insurer's $2,500 PIP and his own. That is, he cannot add his $2,500 PIP to the other insurer's $2,500

and collect $5,000. This is *stacking* and is prohibited by Section 543(a).

MARYLAND MOTOR VEHICLE INSURANCE, § 9.16(A) at 421.

But Janquitto goes on to say that, "[w]hen there are differing amounts of PIP ... it is theoretically possible to coordinate recovery from both policies." *Id.* He states in this regard that it is "absolutely necessary" to pay "careful attention" to the language of the insurance policies to determine how to coordinate the PIP benefits properly. *Id.*

Janquitto's example, of course, is not precisely on point here, since Seitz is not attempting to claim under the insurance policy of the vehicle that struck him as well as from his own policy. Instead, he is attempting to recover under the policies of the *two* vehicles that injured him. The prohibition in § 543(a) is only against "duplicative" or "supplemental" recovery. It is, of course, possible for a pedestrian to be struck by, or injured by, two vehicles, simultaneously or otherwise. Under the statutory scheme, the insurers of both vehicles would be responsible for PIP benefits, so long as the recovery is not duplicative or supplemental.

The *Benton* Court did not define the terms "duplicative" and "supplemental" in its opinion. Moreover, Janquitto acknowledges that defining the terms "is no easy matter." MARYLAND MOTOR VEHICLE INSURANCE § 9.16(A) at 420. In *Yarmuth v. Government Employees Insurance Co.*, 286 Md. 256, 407 A.2d 315 (1979), however, the Court defined the terms in the context of a dispute over uninsured motorist coverage, which is also governed by § 543(a).

In *Yarmuth*, the Court sustained the validity of an "other insurance" clause in an uninsured motorist endorsement that provided that, when an insured sustained bodily injury while occupying a motor vehicle not occupied by the named insured, the insurance provided by the endorsement would apply only as "excess insurance" over the primary insurance covering that motor vehicle, and then only to the extent that the limit of liability of the coverage provided by the endorsement exceeded the applicable limits of liability of the other insurance.

*Yarmuth* also held that § 543(a) prohibits recovery of uninsured motorist insurance benefits from a secondary insurer when the insured has recovered from the primary insurer an amount equal to the statutory minimum coverage, even though the insured's damages exceed that minimum.

The Court stated that "duplicative" means "payment in full twice or more for the same claim." *Id.*, 286 Md. at 264, 407 A.2d 315. But the Court added that, under the *Benton* interpretation, § 543(a) was not "simply a device to prevent recovery on a second policy that would thereby result in a claim in excess of total damages." *Id.*, 286 Md. at 264, 407 A.2d 315. It thus said that the term "supplemental" is "more encompassing" than "duplicative," and "refers to attempts to fill the deficiencies in the uninsured motorist coverage of the primary policy by claiming under a second policy." *Id.* According to the Court, under the terms "duplicative" and "supplemental," "after a claim for policy limits has been paid under the primary policy, recovery under a second policy is prohibited." *Id.*

The Court of Appeals subsequently considered the application of § 543(a) in other cases involving uninsured motorist insurance. In *Rafferty v. Allstate Insurance Co.*, 303 Md. 63, 492 A.2d 290 (1985), the Court applied *Yarmuth* and held that § 543(a) prohibits recovery of uninsured motorist benefits in excess of the statutory minimum from more than one insurer or more than one policy, even if the coverage limit of the primary insurance is less than the coverage limit of the secondary insurance. In *Hoffman v. United Services Automobile Association*, 309 Md. 167, 522 A.2d 1320 (1987), the Court qualified its prior rulings somewhat, and held that, while "an additional recovery under the required minimum *uninsured* motorist coverage of a second policy is precluded, . . . a recovery under the optional excess *underinsured* motorist coverage of a second policy is not precluded." *Id.*, 309 Md. at 177, 522 A.2d 1320 (emphasis supplied).

Applying the foregoing principles to the facts of this case, we conclude that Seitz has not obtained a duplicative or

supplemental recovery from Allstate and Nationwide. The Nationwide policy provided for PIP benefits up to $10,000. Moreover, Seitz's medical expenses were more than his combined recovery of $10,000 from the two carriers, so he did not recover twice for the same injury. Therefore, his recovery is not "duplicative."

Nor is his recovery "supplemental." A close reading of the prior cases indicates that they all involve attempts by an insured to recover under a *secondary* policy after recovering under a primary policy. Here, neither of the policies on the Ward or Foster vehicles may be described as "primary" or "secondary." Since both vehicles "injured" Seitz within the meaning of § 543(b)(1), the insurers of both vehicles are required to pay Seitz PIP benefits under the statutory scheme. Thus, this case does not fall within *Yarmuth*'s edict that an injured party cannot "fill the deficiencies [of the PIP coverage] of the primary policy by recovering under a second policy." 286 Md. at 264, 407 A.2d 315. In addition, the trial court coordinated Seitz's recoveries under the two policies by applying the "other insurance" clause in the Nationwide policy. Pursuant to that clause, the court limited Seitz's total recovery to the maximum coverage provided by the policy with the highest coverage limit. Consequently, there has been no "stacking" of the coverage limits of the two policies. Nor has either party challenged the manner in which the trial court divided the two insurers' responsibilities under the "other insurance" clause.

■ The basic fallacy in Nationwide's position is its contention that an injured pedestrian may never recover PIP benefits from two insurers. Nationwide seems to suggest that, when a pedestrian is injured by two vehicles, the court must pick one vehicle and assign the primary responsibility for PIP benefits to that vehicle's carrier. The statute does not so indicate. Moreover, such a determination might well involve an assignment of "fault," which is at odds with the statutory scheme. Further, we observe that if the court were entitled to choose which insurer was responsible, with or without

regard to fault, the court may well have assigned the entire responsibility for payment of PIP benefits to Nationwide, as it had the policy with greater coverage. In that event, Nationwide would have had to pay the entire $10,000 of its policy limits, rather than its share ($8,000), pursuant to the "other insurance" clause of its policy.

Based on the plain language of the statutory scheme, we cannot agree with Nationwide. Because Seitz was injured by two vehicles carrying PIP coverage, both insurers are liable for PIP benefits under § 543(b)(1). Any other conclusion would require us to rewrite the language of the applicable statutes.

**JUDGMENT AFFIRMED IN FAVOR OF SEITZ AND AGAINST NATIONWIDE IN THE AMOUNT OF $8,000.**

**CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY WITH INSTRUCTIONS TO THE CLERK TO ENTER JUDGMENT IN FAVOR OF SEITZ AND AGAINST ALLSTATE IN THE AMOUNT OF $2,000.**

**COSTS TO BE PAID BY APPELLANT.**