739 A.2d 5

**DWAYNE CLAY, M.D., P.C. t/a 1st Priority Physical Medicine**

v.

**GOVERNMENT EMPLOYEES INSURANCE COMPANY.**

No. 133, Sept. Term, 1998.

Court of Appeals of Maryland.

Oct. 12, 1999.

Jeffrey S. Marcalus (Hillman, Brown & Darrow, P.A., on brief), Annapolis, for petitioner.

Francis J. Ford (Ford & Chervenak, on brief), Rockville, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW *, RAKER, WILNER and CATHELL, JJ.

RODOWSKY, Judge.

In this case a personal automobile liability insurer, in reliance on a nonassignability clause in the policy, refused to recognize a post-accident assignment, by the injured insured to a health care provider, of benefits payable under the policy's uninsured motorist coverage in an amount equal to the provider's charges for health care rendered as a result of the accident. The question presented is whether that application of the nonassignability clause is contrary to public policy. Within the framework of the arguments presented, we shall answer the question "No."

On November 11, 1995, Brenda R. Smith (Smith) was in an automobile accident in the District of Columbia. At the time of the accident, Smith was insured by the respondent, Government Employees Insurance Company (GEICO). The driver of the car that struck Smith was uninsured at the time of the accident. Smith was treated for her injuries by the petitioner, Dwayne Clay, M.D., P.C. t/a 1st Priority Physical Medicine. In lieu of payment at the time of treatment Smith executed an "Assignment of Rights" form which did not identify Smith's insurer. In relevant part the assignment read:

"For treatment provided, I hereby authorize the _____ Insurance Company to pay by check made out and mailed directly to:

1st PRIORITY PHYSICAL MEDICINE

645 SOLOMON'S ISLAND ROAD, NORTH

SUITE 430

PRINCE FREDERICK, MD 20678

---

* Chasanow, J., now retired, participated in the hearing and conference of this case while an active member of this Court but did not participate in the decision and adoption of this opinion.

for the medical expense benefits allowable, and otherwise payable to me under my current insurance policy, as payment toward the total charges for Professional Services rendered. This payment will not exceed my indebtedness to the above mentioned assignee, and I agree to pay, as per my financial arrangement.

. . . .

"THIS IS A DIRECT ASSIGNMENT OF MY RIGHTS AND BENEFITS UNDER THIS POLICY AND INCLUDES ALL RIGHTS TO COLLECT BENEFITS DIRECTLY FROM THE PATIENT'S INSURANCE COMPANY."

Smith never pursued a personal injury claim against the tortfeasor, nor did she make a claim against GEICO under the uninsured motorist benefits portion of her automobile insurance policy. After repeated demands for payment, Clay filed a lawsuit against Smith for her treatment charges and obtained a judgment. Thereafter Smith filed for bankruptcy, scheduled her debt to Clay, and the judgment was discharged by the bankruptcy court.

Clay subsequently demanded payment from GEICO pursuant to the "Assignment of Rights" from Smith. GEICO refused Clay's demand, in reliance on the nonassignability clause contained in its automobile insurance policy with Smith. That clause reads:

"SECTION V—GENERAL CONDITIONS

. . . .

4. ASSIGNMENT

Assignment of interest under this policy will not bind us without our consent." [1]

■ Following GEICO's refusal to pay, Clay, as assignee of the insured's claim, filed suit against GEICO in the District Court of Maryland, sitting in Calvert County. Clay sought

---

1. Neither Clay nor GEICO presented any evidence as to the purpose of this provision.

payment only out of the uninsured motorist benefits payable under Smith's policy. An insured's claim against the insurer based on a policy's uninsured motorist coverage is a contract claim. *See Erie Ins. Co. v. Curtis,* 330 Md. 160, 172, 623 A.2d 184, 190 (1993); *Reese v. State Farm Mut. Auto. Ins. Co.,* 285 Md. 548, 553, 403 A.2d 1229, 1232 (1979).[2]

The District Court entered judgment in favor of GEICO, holding that "the anti-assignment clause between Brenda Smith and [GEICO] was valid, enforceable and not waived." That court reasoned "that Brenda Smith had no contractual right to assign any interest she had under her policy to anyone else without GEICO's consent. GEICO never gave that consent. Such clauses are valid and enforceable in Maryland[. *See* ] *Michaelson v. Sokolove,* 169 Md. 529[, 534, 182 A. 458, 460] (1936)." [3]

Clay appealed to the Circuit Court for Calvert County, which affirmed. Clay then filed a petition for the writ of certiorari, which we granted.

---

**2.** For reasons which do not appear in the record, Clay did not assert that the assignment reached benefits payable under Smith's personal injury protection (PIP) coverage, if any. *See* Maryland Code (1997), §§ 19–505 through 19–508 of the Insurance Article. Consequently, the validity of a nonassignability clause, if applied to PIP benefits, is a question that is not before us.

**3.** *Michaelson* involved a life insurance policy issued on a husband and father who had elected that death benefits be paid under a supplementary contract in monthly installments to his widow and, on her death, to their children. Upon death of the insured the insurer issued the supplementary contract to the widow providing for payments as elected by the insured, and further providing that the benefits accruing thereunder would not be transferrable " 'or in anyway subject to the debts of any beneficiary or payee, or to legal process except as otherwise provided by law.' " *Id.* at 531, 182 A. at 459. After remarrying, the widow assigned the stream of payments to the sellers of stock as security for her deferred payment of the purchase price of the stock. This Court affirmed the denial of an injunction sought by the sellers of the stock to require the insurer to honor the assignment. We reasoned that honoring the assignment would be a breach of the contract between the insured and the company because the contract was intended "to protect his wife and children against any diversion of the funds . . . provided for their use." *Id.* at 533, 182 A. at 460.

■ In this Court, Clay contends that a nonassignability clause in an automobile liability insurance policy should not be enforceable against a health care provider who treats the insured in return for an assignment of uninsured motorist benefits. Clay's submission is that accident victims should receive necessary medical treatment, but that accident victims who lack adequate health insurance, or who are financially unable to pay, will not receive necessary medical treatment unless they are allowed to assign the benefits available under their automobile insurance policy. On this reasoning Clay concludes that application of the nonassignability clause in GEICO's policy to an assignment of uninsured motorist benefits to a health care provider is unenforceable because it is contrary to strong public policy.

GEICO submits that, under Maryland law, parties to a contract may provide that rights under their contract cannot be assigned. Further, argues GEICO, there is no affront to public policy because the nonassignability clause neither eliminates nor reduces the uninsured motorist benefits; the clause simply limits to the insured the receipt of the benefits payable under the policy. In addition, if public policy requires recognizing assignments to health care providers of uninsured motorist benefits in the face of a nonassignability clause, GEICO sees no principled basis on which to limit the class of potential assignees, with the result that all of the benefits payable to the insured could be exhausted by assignments to other creditors.

Because of the limited arguments advanced by the parties, we have no need in this case to review general contract law on assignments. GEICO has not argued that the assignment executed by Smith would be ineffective to transfer to Clay an interest in uninsured motorist benefits, absent the policy's nonassignability clause. Clay has not argued that, even if the nonassignability clause is valid and enforceable, operation of the clause, as drafted, would not reach a post-accident assignment of Smith's anticipated uninsured motorist benefits. In other words, the sole issue in this case, as argued, is whether the nonassignability clause is unenforceable on public policy

grounds when applied to an assignment of uninsured motorist benefits to a health care provider under the circumstances here.

The approach of Maryland courts to arguments, such as that advanced by Clay, that are based upon public policy was stated in *Maryland-National Capital Park & Planning Commission v. Washington National Arena*, 282 Md. 588, 386 A.2d 1216 (1978), where we said:

> "Fearing the disruptive effect that invocation of the highly elusive public policy principle would likely exert on the stability of commercial and contractual relations, Maryland courts have been hesitant to strike down voluntary bargains on public policy grounds, doing so only in those cases where the challenged agreement is patently offensive to the public good, that is, where 'the common sense of the entire community would . . . pronounce it' invalid. This reluctance on the part of the judiciary to nullify contractual arrangements on public policy grounds also serves to protect the public interest in having individuals exercise broad powers to structure their own affairs by making legally enforceable promises, a concept which lies at the heart of the freedom of contract principle."

*Id.* at 606, 386 A.2d at 1228–29 (citations omitted). *See also Wolf v. Ford*, 335 Md. 525, 532, 644 A.2d 522, 526 (1994); *Anne Arundel County v. Hartford Accident & Indem. Co.*, 329 Md. 677, 686–87, 621 A.2d 427, 431 (1993); *Finci v. American Cas. Co.*, 323 Md. 358, 376, 593 A.2d 1069, 1077–78 (1991).

This Court has also quoted with approval the following passage from *Patton v. United States*, 281 U.S. 276, 306, 50 S.Ct. 253, 261, 74 L.Ed. 854, 867 (1930):

> "The truth is that the theory of public policy embodies a doctrine of vague and variable quality, and, unless deducible in the given circumstances from constitutional or statutory provisions, should be accepted as the basis of a judicial determination, if at all, only with the utmost circumspection. The public policy of one generation may not, under changed conditions, be the public policy of another."

*See Anne Arundel County v. Hartford Accident & Indem. Co.,* 329 Md. at 687, 621 A.2d at 432; *Finci,* 323 Md. at 376, 593 A.2d at 1078; *First Nat'l Bank v. Fidelity & Deposit Co.,* 283 Md. 228, 239, 389 A.2d 359, 365 (1978). " '[D]eclaration of public policy is normally the function of the legislative branch.' " *Anne Arundel County v. Hartford Accident & Indem. Co.,* 329 Md. at 688, 621 A.2d at 432 (quoting *Adler v. American Standard Corp.,* 291 Md. 31, 45, 432 A.2d 464, 472 (1981)). Consequently, "[t]he lesser the relationship . . . between a statute and a contractual provision, the greater is the reluctance of this Court to invalidate the provision on the basis of the public policy embraced in statute." *Finci,* 323 Md. at 378, 593 A.2d at 1079.

The General Assembly first recognized the importance of uninsured motorist coverage in 1972 when it required insurers to offer the option of buying such coverage. *See* Chapter 73 of the Acts of 1972. In 1975 the General Assembly required all insurers issuing, selling, or delivering automobile insurance policies in Maryland to provide uninsured motorist coverage in at least the amounts required under the compulsory automobile liability insurance statute. *See* Chapter 562 of the Acts of 1975. Currently, Md.Code (1997), §§ 19–509 through 19–511 of the Insurance Article (IA), address uninsured motorist coverage. It is described in § 19–509(c):

"(c) *Coverage required.*—In addition to any other coverage required by this subtitle, each motor vehicle liability insurance policy issued, sold, or delivered in the State after July 1, 1975, shall contain coverage for damages, subject to the policy limits, that:

"(1) the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle; and

"(2) a surviving relative of the insured . . . is entitled to recover from the owner or operator of an uninsured motor vehicle because the insured died as the result of a motor

vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle."

 Maryland's mandated uninsured motorist coverage embodies a public policy " 'to assure financial compensation to the innocent victims of motor vehicle accidents who are unable to recover from financially irresponsible uninsured motorists.' " *Lee v. Wheeler*, 310 Md. 233, 238, 528 A.2d 912, 915 (1987) (quoting *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Gartelman*, 288 Md. 151, 157, 416 A.2d 734, 737 (1980)). *See also Nationwide Mut. Ins. Co. v. Webb*, 291 Md. 721, 737, 436 A.2d 465, 474 (1981) ("The courts have repeatedly stated that the purpose of uninsured motorist statutes is 'that each insured under such coverage have available the full statutory minimum to exactly the same extent as would have been available had the tortfeasor complied with the minimum requirements of the financial responsibility [l]aw.' " (quoting *Webb v. State Farm Mut. Auto. Ins. Co.*, 479 S.W.2d 148, 152 (Mo.Ct.App.1972))). The uninsured motorist statutory plan is remedial in nature and "dictates a liberal construction in order to effectuate its purpose of assuring recovery for innocent victims of motor vehicle accidents." *State Farm Mut. Auto. Ins. Co. v. Maryland Auto. Ins. Fund*, 277 Md. 602, 605, 356 A.2d 560, 562 (1976). Thus, the intended direct beneficiary of uninsured motorist coverage is the accident victim or his or her family, not health care providers or other creditors of the insured. Under GEICO's interpretation of the challenged clause, it operates to place the insurance benefits in the hands of the intended beneficiary.

In addition to uninsured motorist coverage, every automobile insurance policy issued in Maryland must also contain PIP coverage, *see* IA §§ 19–505 through 19–508, unless the coverage is waived in accordance with § 19–506. In contrast to uninsured motorist benefits, PIP coverage specifically provides no-fault "medical, hospital, and disability benefits" for those "who [are] injured in a motor vehicle accident." *See* IA § 19–505(a). The main purpose of PIP coverage "is to assure financial compensation to victims of motor vehicle accidents without regard to the fault of a named insured or other

persons entitled to PIP benefits." *Pennsylvania Nat'l Mut. Cas. Ins. Co.,* 288 Md. at 154, 416 A.2d at 736. *See also Nationwide Mut. Ins. Co. v. Seitz,* 110 Md.App. 355, 362, 677 A.2d 129, 132 (1996) ("The purpose of the PIP legislation was 'to put a limited amount of money in the hands of an injured individual under certain circumstances without regard to whether another person is liable for the injuries which the claimant sustained.'" (quoting *Smelser v. Criterion Ins. Co.,* 293 Md. 384, 393, 444 A.2d 1024, 1029 (1982))). Unlike the PIP statute, the uninsured motorists insurance statute does not specify medical treatment expenses as an object of the coverage. Under the latter coverage the cost of medical care is but part of the broader spectrum of damages recoverable for personal injury.

The Maryland statute most directly addressing the credit risk that a health care provider incurs in treating accident victims is the hospital lien law, Md.Code (1975, 1990 Repl.Vol., 1998 Cum.Supp.), §§ 16–601 through 16–605 of the Commercial Law Article (CL). That statute creates a lien for reimbursement, to the extent therein provided, for medical services a hospital renders patients injured in an accident that is not covered by the Workers' Compensation Act. In *St. Joseph Hospital v. Quinn,* 241 Md. 371, 376, 216 A.2d 732, 734 (1966), we said that "[t]he obvious purpose of the Maryland [hospital] lien law was to insure that the lawyer, the hospital and the injured person each received some share of the amount recovered from the tort-feasor."

"Hospital" is defined in Md.Code (1982, 1996 Repl.Vol., 1998 Cum.Supp.), § 19–301(f) of the Health–General Article. It reads:

"(f) *Hospital.*—'Hospital' means an institution that:

"(1) Has a group of at least 5 physicians who are organized as a medical staff for the institution;

"(2) Maintains facilities to provide, under the supervision of the medical staff, diagnostic and treatment services for 2 or more unrelated individuals; and

"(3) Admits or retains the individuals for overnight care."

In his brief to this Court, Clay acknowledges that the hospital lien law is inapplicable because Clay is not a hospital. Accordingly, Clay's public policy argument lies well beyond the boundaries of the statute that directly addresses collection by a health care provider out of liability insurance proceeds for the cost of medical care to an accident victim.

That the costs of medical care are part of the damages for tortious personal injury and, if incurred in an automobile accident with an uninsured motorist, are recoverable under uninsured motorist insurance is not a basis for holding that enforcing the GEICO nonassignability clause in the instant matter is contrary to public policy. The relationship between the result sought by Clay and the public policy underlying the statutes reviewed above is far too attenuated for a court to declare the clause unenforceable in the circumstances of this case. Indeed, the argument advanced by Clay is not as strong as the public policy argument that this Court rejected in *Finci*, 323 Md. 358, 593 A.2d 1069.

In that case the State of Maryland Deposit Insurance Fund (MDIF), an entity specially created by the General Assembly, was the receiver of an insolvent savings and loan association. MDIF had the statutory obligation to " 'marshal and collect the assets and exercise all of the powers necessary to liquidate the business affairs' " of the failed association. *Id.* at 377, 593 A.2d at 1079. MDIF, as receiver, had obtained judgments against former officers and directors of the thrift, based on breach of the duty of loyalty. American Casualty Co. had issued an officers and directors liability insurance policy covering the judgment debtors, and the judgment debtors assigned their claims against the insurer to MDIF. When MDIF, as assignee, sued on the liability policy American Casualty Co. rejected the claim based on the policy's exclusion from coverage of loss in connection with a claim made against officers and directors based upon an action brought by a depository insurance organization. *Id.* at 368, 593 A.2d at 1074. MDIF contended that the exclusion was void as contrary to public

policy. In essence, MDIF's argument was "that the taxpayers of Maryland will have to pay any deficit in the insurance fund from which depositors in ... insured, insolvent, Maryland savings and loan associations have been made whole, and that it is socially desirable to reduce that deficit to the maximum extent possible." *Id.* at 379, 593 A.2d at 1079–80. We held that statutes placing a duty on public officials to collect funds are not a basis for invalidating contracts, simply to facilitate collection. *Id.* at 380, 593 A.2d at 1080. Here Clay extended credit to Smith and has been unable to collect. 'Unlike MDIF in the *Finci* case, Clay cannot even assert that his public policy argument protects the public purse.

*See also Wolf,* 335 Md. 525, 535, 644 A.2d 522, 527–28 (clause in contract between stockbroker and customer exculpating broker from liability for losses in discretionary account that were not caused by gross negligence or willful misconduct not contrary to public policy); *Anne Arundel County v. Hartford Accident & Indem. Co.,* 329 Md. 677, 688, 621 A.2d 427, 433 (clause in fidelity bond requiring that restitution payments by thief first be applied to reimbursing insurer and then to insured's deductible not contrary to public policy, despite condition of probation that limited restitution to amount equal to deductible); *Food Fair Stores, Inc. v. Joy,* 283 Md. 205, 216, 389 A.2d 874, 881 (1978) (release from civil liability of storekeeper by accused shoplifter in consideration of prosecutor's dismissal of criminal charges not contrary to public policy); *cf. Jennings v. GEICO,* 302 Md. 352, 357, 488 A.2d 166, 168 (1985) (household exclusion in automobile liability insurance policy conflicts with public policy that such insurance be compulsory, as set forth in Title 17 of the Transportation Article, and is invalid).

As support for his argument, Clay relies on *Hernandez v. Suburban Hospital Association,* 319 Md. 226, 572 A.2d 144 (1990). In *Hernandez* a hospital sued the attorney for one of its patients for the cost of care. The hospital alleged that the attorney violated his obligation to honor the assignment to the hospital of any tort claim recovery and violated the. client's authorization to the attorney to honor the assignment, all as

evidenced by a document executed by both the attorney and the patient. We held that the attorney was liable to the hospital. In explaining that there was "good reason to enforce such assignments," we said:

> "The cost of health care may be considerable, as it was in this case, and patients injured by the actions of others are often not in a position to pay for that care at the time they need and receive it. Those costs are frequently the major element of special damage in the tort case. On the other hand, funds recovered from such tort actions are not subject to execution by judgment creditors. Thus, if the assignment of those funds is not permitted, the health care provider may be forced to pursue its claim expeditiously against the patient, a likely effect of which will be to involve the patient in double litigation and put at risk the patient's personal assets. Enforcement of an assignment can avoid this problem; if given some assurance of payment from the proceeds received from the tort action, the hospital may forego immediate collection efforts and thus allow the patient a measure of financial stability."

*Id.* at 235, 572 A.2d at 148 (citation omitted).

A nonassignability clause was not involved in *Hernandez.* Tortfeasors and automobile accident victims ordinarily do not enter into contracts restricting the assignability of the tort damages.[4] The quoted statement from *Hernandez* would be relevant if the GEICO policy did not contain the nonassignability clause, and GEICO was contending that Smith's assignment to Clay was contrary to public policy. Here, however, Clay contends that the nonassignability clause in GEICO's policy is contrary to public policy. The reasons advanced by Clay are too nebulous to permit a judicial declaration that the

4. Citing Unkle v. Unkle, 305 Md. 587, 599, 505 A.2d 849, 853 (1986), and Summers v. Freishtat, 274 Md. 404, 409, 335 A.2d 89, 90–91 (1975), *Hernandez* reiterated that such choses in action are assignable. See also Advance Fin. Co. v. Trustees of Clients' Sec. Trust Fund of the Bar of Maryland, 337 Md. 195, 203–04, 652 A.2d 660, 664 (1995) (litigation arising out of assignments of recoveries on personal injury claims as security for loans).

clause is unenforceable on public policy grounds as applied here.

**JUDGMENT OF THE CIRCUIT COURT FOR CAL-VERT COUNTY AFFIRMED. COSTS TO BE PAID BY THE PETITIONER.**